UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 06-424-GWU

MARGARET D. KIDD, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her application for Disability Insurance Benefits (DIB). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

2

06-424 Kidd

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged

3

>pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

5

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's

physical and mental impairments.  <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Margaret D. Kidd, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of degenerative disc disease and osteoporosis.  (Tr. 15).  Nevertheless, the ALJ concluded that the plaintiff retained the residual functional capacity to perform her past relevant work as a teacher's aide as it is performed in the national economy, and therefore was not entitled to benefits. (Tr. 18-20).[1]  The Appeals Council declined to review, and this action followed.

Although there are some troubling lapses in the ALJ's evaluation of the evidence, the court must conclude that the administrative decision is supported by substantial evidence.

Mrs. Kidd alleged disability to a back injury, bulging discs, and strained muscles.  (Tr. 76).  She was not sure of the date of her injury, but finally had to stop working as a teacher's aide in June of 2004, fell in September, and further injured her back bending over in January of 2005.  (Tr. 177).  She had consulted an orthopedic surgeon who had given the option of having surgery or choosing to "live

---

[1] The ALJ stated in his decision that the VE testified that the plaintiff could return to her past relevant work as a teacher's aide as it is generally performed in the national economy (Tr. 18), but the court can find no such testimony in the transcript (Tr. 192-4). The ALJ proceeded with the sequential evaluation process in the alternative (Tr. 18), and given the outcome of the case, any inconsistency is moot.

with it," but he could give no guarantee that surgery would work and she had not been able to get her insurance "involved in surgery." (Tr. 178). The physician had told her that she would feel better over time, and she admitted that she was somewhat better with physical therapy. (Tr. 178-9). However, she could not sit or stand for long periods of time without severe pain. (Tr. 179). It had also been discovered that her neck had a herniated disc with a spur, but the neurosurgeon who evaluated her for this condition, Dr. El-Naggar, advised her not to have surgery. (Tr. 184).

Medical records in the transcript include office notes from Mrs. Kidd's family physician, Dr. Nancy West, and reflect complaints of lower back pain and tenderness after bending over in January, 2005. (Tr. 132). Dr. West obtained testing, including an MRI of the lumbosacral spine, which showed a compression fracture of the L4 vertebra, although the radiologist commented that the appearance was "consistent with benign etiology." (Tr. 137). There was also a bulging disc at L3-4 which resulted in mild central stenosis. (Id.). A bone scan showed osteoporosis. (Tr. 139).

An orthopedist, Dr. Edward Kahn, examined the plaintiff on one occasion on May 18, 2005, on referral from Dr. West. The plaintiff stated that she was unable to do any activity without severe pain, and Dr. Kahn agreed that the MRI showed a fracture of L4, although he felt there was no spinal cord impingement. (Tr. 123). His examination found tenderness in the lumbosacral spine, but apparently negative straight leg-raising. (Id.). Dr. Kahn gave Mrs. Kidd the option of surgery, but stated

that he would anticipate that the fracture would heal, although he did not know whether it would take one month or six months. (Tr. 124). He indicated that the plaintiff had decided that she would wait and see whether it healed on its own. (Id.). No functional restrictions are given.

Dr. M. Allen Dawson, a state agency physician who reviewed the record after Dr. Kahn's report had been added, concluded that Mrs. Kidd would be able to perform "light" exertion, could never climb ladders, ropes, or scaffolds, could occasionally climb ramps or stairs, stoop, and crouch, and needed to avoid concentrated exposure to vibration. (Tr. 140-7). He cited a notation in Dr. West's office notes that the plaintiff could not sit or stand for long periods of time (Tr. 130) and stated that he gave it great weight. (Tr. 146).

Subsequent office notes from Dr. West show that the plaintiff was seen for transient conditions, but on August 23, 2005 Dr. West wrote that Mrs. Kidd was "permanently disabled to work secondary to mu[l]ti-degenerative disc." (Tr. 164). Subsequently, the plaintiff was apparently complaining of neck pain, and a cervical spine MRI in December, 2005 showed a protrusion at the C6-7 level with sac effacement but no cord compression. (Tr. 162, 165). Dr. West referred her patient to Dr. Amr El-Naggar, a neurosurgeon, who conducted an examination on February 13, 2006 for evaluation of neck, mid back, and low back pain. (Tr. 167). Dr. El-Naggar described the plaintiff as having an "mild" loss of disc height and an old compression fracture in the lower spine, which appeared to be stable without any

significant edema. There was no evidence of disc herniation or nerve root compression, and he stated that he did not recommend surgery in this area. (Id.). The neurosurgeon described the cervical region as having a disc bulge with a small osteophyte but with no herniation or compression, and recommended physical therapy and a non-steroidal anti-inflammatory medication. If there was no improvement, he recommended referral to a pain clinic for injections. His physical examination showed pain on flexion of the cervical spine and tenderness at that level as well as in the thoracic and lumbar areas, but Mrs. Kidd had normal strength and reflexes and no dysfunction of gait and coordination. (Tr. 168-9). No functional restrictions are restricted.

The ALJ rejected Dr. West's opinion of total disability, stating that it was inconsistent with the course of treatment which would be expected of a truly disabled individual, and noting that "most recent records show that she is improving, physical therapy records indicated excellent progress, decreased pain, and increased activities of daily living." (Tr. 18). The ALJ also noted that a statement of whether a claimant is "disabled" requires the consideration of medical findings and vocational factors in the context of "legal standards." (Id.).

The ALJ's specific residual functional capacity finding was that Mrs. Kidd could perform light level exertion with a sit/stand option every 30 minutes. (Tr. 17). This is not supported by any examining or reviewing source. However, he could reasonably have relied on the somewhat greater restrictions given by Dr. Dawson

(which were provided to the VE) and could reasonably have rejected the opinion of Dr. West.

The plaintiff argues on appeal that the ALJ failed to articulate good reasons for his decision to reject the treating source opinion as required by <u>Wilson v. Commissioner of Social Security</u>, 378 F.3d 541, 544 (6th Cir. 2004). The plaintiff understandably objects to some of the statements made by the ALJ, such as the assertion that there had been no referrals for surgery (Tr. 17), noting that she had been referred to several specialists and it was indicated by one of them that surgery was an option. Also, although the plaintiff's most recent physical therapy note did indicate some improvement, it was dated April 19, 2005, which was a month before she saw Dr. Kahn and approximately ten months before she saw Dr. El-Naggar, who recommended more physical therapy. Although the ALJ's rationale in these specific instances was insufficient, his ultimate statement that a conclusory opinion of "disability" requires the consideration of vocational factors outside a physician's area of expertise is correct, and fulfills the substantive requirements discussed in <u>Wilson</u> for the ALJ to "give good reasons" for rejecting the opinion of the plaintiff's treating physician.

The plaintiff's second argument is that, after her 55th birthday on September 14, 2005, she should have been found disabled under Rule 202.06 of the Commissioner's Medical-Vocational Guidelines (the "grids"), applicable to a person "closely approaching advanced age," with a high school education and no

11

transferable work skills. This Rule directs a conclusion of "disabled." However, as the plaintiff recognizes, she first must establish an inability to return to her past relevant work. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987). While the plaintiff's testimony shows that her work involved greater than "light" level lifting (e.g., Tr. 66, 181), and as previously discussed, the ALJ erred in stating that the VE testified a person with her restrictions could perform such work, it is well established that the finder of fact can rely on the Dictionary of Occupational Titles (DOT) to define the job as it is usually performed in the national economy. See Social Security Ruling 82-61. Exhibit 11E contains a copy of DOT Section 249.367-074, defining the requirements of a position known as "Teacher Aide II." (Tr. 104). The job involves "light" level exertion, with no climbing, stooping, or exposure to vibration. (Id.). Although the DOT does not address the need for a sit/stand option, it was still the plaintiff's burden to produce evidence that the job could not be performed with her established restrictions. This she failed to do.

The plaintiff, who was represented by a non-attorney representative at the administrative level, finally argues that the ALJ failed to properly develop the record, citing Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1051 (6th Cir. 1983). Lashley, however, specifically dealt with an unrepresented plaintiff who had a mental impairment, which is not the case here. The Sixth Circuit has declined to hold that the mere fact that a claimant is totally unrepresented is grounds for reversal. Duncan v. Secretary of Health and Human Services, 801 F.2d 856 (6th Cir

1986). Mrs. Kidd was a high school graduate who was articulate and was represented by an individual who described himself as a paralegal and who was capable of making detailed arguments about the testimony and the Commissioner's Regulations. (E.g., Tr. 170-1, 195-6). The plaintiff cites the unpublished case of <u>Lambdin v. Commissioner of Social Security</u>, 62 Fed. Appx. 623 (6th Cir. 2003) as standing for the proposition that a heightened duty to develop the record exists when the plaintiff is represented by a non-attorney, but this case turned on a reopening of an ALJ's decision regarding illiteracy by the Appeals Council, where the record had several contradictions. The lack of allegation of any mental impairment or learning disability, combined with the plaintiff's educational level, does not make the holding in this unpublished case apposite to the present set of facts. Ultimately, it is the plaintiff's duty to prove her own case, and she simply failed to present competent evidence that she could not do her past work as it is generally performed in the national economy.

Finally, the court notes in passing that even if the burden had shifted to the Commissioner to prove that there were other jobs in the economy which could be performed, the ALJ asked the VE, at the administrative hearing, a series of hypothetical questions concerning the plaintiff, who was 54 years old at the time of her alleged onset date, a high school graduate (Tr. 175), and had a history of work as a teacher's aide and office clerk (Tr. 192). All of the questions concerned an individual who could not climb scaffolds or ropes, could occasionally stoop and climb

13

06-424 Kidd

ramps and stairs, and needed to avoid vibration; in addition, the questions limiting the plaintiff to light and sedentary level exertion also asked the VE to assume that the person would need a sit/stand option at 30 minute intervals. (Tr. 192-4). The VE testified that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 193-4). These restrictions are essentially consistent with the opinion of Dr. Dawson, and would provide substantial evidence that the plaintiff could perform other jobs in the economy.

The decision will be affirmed.

This the 11th day of July, 2007.

Signed By:

*G. Wix Unthank*

**United States Senior Judge**